UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| DAVID S. TAYLOR, JIM CONLIN, and KARL TODD, individually and on behalf of all similarly situated persons, | : : : : : : |  |
|---|---|---|
| Plaintiffs, | : : |  |
| v. | : : | 3:06cv1494 (WWE) |
| UNITED TECHNOLOGIES CORPORATION, UNITED TECHNOLOGIES CORPORATION PENSION AND INVESTMENT COMMITTEE, UNITED TECHNOLOGIES CORPORATION PENSION AND ADMINISTRATION COMMITTEE, | : : : : : : : : : : |  |
| Defendants. | : |  |

## MEMORANDUM OF DECISION ON MOTION FOR CLASS CERTIFICATION

Plaintiffs David Taylor, Jim Conlin and Karl Todd, individually and on behalf of all similarly situated persons, have filed an action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, plaintiffs allege that defendants United Technologies Corporation ("UTC"), its Pension and Investment Committee ("PAIC"), and its Pension Administration Committee ("PAC") breached their fiduciary duties pursuant to ERISA with regard to an employee benefit plan. Plaintiffs now move for class certification.

**BACKGROUND**

The following background to plaintiffs' claims is reflected in the allegations of the amended complaint and the parties' briefs and the exhibits thereto.

UTC offers certain of its employees the opportunity to participate in an employee benefit plan known as the Employee Savings Plan ("Savings Plan"), which contains employee stock ownership plan provisions and is a tax-qualified 401(k) plan. The Savings Plan is governed by a single Plan document and all of the same investment options are available to all Plan participants. All Plan participants receive a Summary Plan Description ("SPD"), an annual report and quarterly statements for their individual accounts.

Under the Savings Plan, qualified employees may contribute a percentage of their before-tax earnings to the Savings Plan. UTC makes matching contributions in UTC common stock rather than cash in varying percentages of the employees' eligible compensation.

Employees participating in the Savings Plan may choose to invest their contributions in any of 25 options. These investment options include eight collective trusts, sixteen retail mutual funds, and the UTC Common Stock Fund. Savings Plan participants may invest in the UTC Common Stock Fund by buying units of the Stock Fund.

Although the UTC Common Stock Fund invests in a single stock, the value credited to a Savings Plan participant's "units" do not track the value of UTC common stock because the UTC Common Stock Fund holds cash to fund participants'

distributions, loans or investment changes.   Plaintiffs allege that the holding of cash has a negative impact on the UTC Common Stock Fund returns, and defendants breached their fiduciary obligations with respect to the UTC Common Stock Fund by allowing excess cash to be held in the fund.   Plaintiffs assert that they did not discover that defendants had breached their fiduciary responsibilities until shortly before the filing of this action because of acts of fraud and concealment and because of the false representations made to Plan participants that the performance of the Stock Fund would reflect the total investment return on UTC common stock.

Defendants have employed various service providers to assist with administration and management of the Plan.   Plaintiffs assert that the participants and beneficiaries have paid unreasonably high fees for the administrative or investment management services, and that those individuals invested in mutual funds have been paying more for administrative services than any other Plan participants.

Defendants allegedly breached their fiduciary duties to ensure that the investment management fees and expenses, as well as the brokerage fees, expenses and commissions charged to the Savings Plan and its participants were not unreasonable or excessive.

Plaintiffs maintain that Plan participants did not have complete and actual knowledge of the fees and expenses being charged to the Plans that reduced their returns.  Due to defendants' alleged failure and refusal to provide information regarding Plan expenses, the participants have not been provided with the opportunity to obtain sufficient information to make informed investment decisions.

Defendants have allegedly failed to satisfy their fiduciary duties by recapturing

the interest on funds that have not yet been dispersed after a participant cashes out an account or withdraws funds.  Defendants allegedly breached their fiduciary duties to select prudent investment options and to act solely in the interest of the Plan participants.  Defendants' alleged acts of fraud and concealment impeded plaintiffs from discovering such breaches of fiduciary duties.

## DISCUSSION

Plaintiffs Taylor, Conlin, and Todd assert that they are current or former employees of UTC and are "participants" in the Savings Plan.  In their role as participants, they seek to represent the following class and subclass:

> Class: All persons who, since January 1, 1997 through the present, were or currently are participants or beneficiaries of the Savings Plan, and those who will become participants of the Savings Plan in the future.  Excluded from the class are the named defendants.

> Subclass: All members of the class who invested Savings Plan contributions in any mutual fund or funds.

On behalf of the class as a whole, plaintiffs allege breach of fiduciary duty for damages resulting from cash in the Stock Fund (count I); breach of fiduciary duty for damages resulting from payment of excessive recordkeeping and administrative fees (count II); breach of fiduciary duty for damages resulting from misleading representations regarding fees and expenses (count III); breach of fiduciary duty for equitable relief including a declaration that defendants provided participants with confusing, false and misleading information (count IV); breach of fiduciary duty for damages resulting from failure to capture "Float" (count VI); and breach of fiduciary duty for damages resulting from payment of excessive investment management and

brokerage fees (count VII). On behalf of the subclass, plaintiffs allege breach of fiduciary duty for damages resulting from false representation regarding payments to Fidelity (count V).

**Standing**

The Court must first address defendants' challenge to plaintiffs' standing to bring certain claims. Specifically, defendants argue that plaintiffs lack standing to prosecute a breach of fiduciary duty claim premised on the amount of cash held in the UTC Common Stock Fund because none of the named plaintiffs had any of their UTC 401(k) Plan funds invested in that Fund at the time this action was commenced.[1] Defendants also maintain that the proposed representatives do not have standing to assert a claim based on revenue sharing because it does not appear that they were adversely affected by revenue sharing.

The doctrine of Article III standing requires a litigant to demonstrate that (1) the litigant must have suffered actual or threatened injury as a result of the illegal conduct of the defendant, (2) the injury is fairly traceable to the challenged action, and (3) the injury is redressable by a favorable decision. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982). Plaintiffs' harm must be actual or imminent, not conjectural or hypothetical. Port Washington Teachers' Assoc. v. Bd. of Educ. of the Port Washington Union Free Sch. Dist., 478 F.3d 494, 498 (2d Cir. 2007).

---

[1] The complaint alleges that defendants "violated their fiduciary obligations under ERISA by ... holding ... excess cash in the UTC common Stock Fund and thereby impairing participants' returns."

5

Plaintiffs counter that their claims addressing the UTC Stock Fund and revenue sharing concern, respectively, imprudent decisions and charges of excessive fees and costs that damaged the Plan as a whole. Because a retirement plan is an "aggregation of its participants' individual accounts," any loss to the Plan causes a loss to the Plan's participants. Tussey v. ABB, Inc., 2008 WL 379666 (W.D.Mo.). Thus, plaintiffs fulfill standing based on their allegation that defendants breached their fiduciary duties by making decisions resulting in impaired returns or unreasonable fee charges and expenses. "If, but for the breach, the Fund would have earned more than it actually earned, there is a loss for which the breaching fiduciary is liable." Dardaganis v. Grace Capital, Inc., 889 F.2d 1237, 1243 (2d Cir. 1989). Accordingly, the loss to the Plan assets due to excessive fees or impaired returns represents a concrete and actual injury to satisfy standing.

**Federal Rule of Civil Procedure 23(a)**

To receive class certification, plaintiffs must first satisfy the four elements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality and the adequacy of representation. Plaintiffs must then meet at least one of the three subsections of Rule 23(b). McLaughlin v. American Tobacco Co., 522 F.3d 215, 222 (2d Cir. 2008).

Rule 23 is to be construed liberally according to a standard of flexibility. Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997). Consideration of class certification is not an occasion to examine the merits of the claims. Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999). Rule 23 does not afford the district court the authority to conduct a preliminary inquiry into the merits of a suit. Eisen v. Carlisle &

Jacquelin, 417 U.S. 156, 177 (1974).

There is no question that numerosity is met because more than forty class members exist. Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is presumed at a level of forty members). Further, the parties do not contest that common questions of fact and law are at the core of this action.

Defendants first attack plaintiffs' motion for certification on grounds that they cannot meet the conditions of typicality and adequacy of representation required for Rule 23(a).

Typicality

Defendants contend that the named plaintiffs cannot meet the typicality requirements because their testimony reflects ignorance of the fee charges at issue, and because plaintiffs Taylor and Todd signed waivers.[2]

The typicality requirement is met when each class member's claim arises from the same alleged unlawful conduct or the same course of conduct affects both the named plaintiffs and the class sought to be represented. Marisol A., 126 F.3d at 376; Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). "Differences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." Oulette v. Int'l Paper Co., 86 F.R.D. 476, 480 (D. Vt. 1980).

Although commonality and typicality requirements tend to merge, Marisol A., 126 F.3d at 376, defendants challenge typicality but appear to have conceded that plaintiffs meet the commonality requirement. Defendants complain that the proposed class

---

[2]To the extent that defendants assert these grounds to attack plaintiffs' satisfaction of adequacy, the Court rejects such arguments for the reasons explained relevant to typicality.

7

representatives are not typical because their testimony reflects that fee disclosures were immaterial in their investment decisions. However, plaintiffs' testimony underscores that the participants were not aware of the amount of fees being charged, which represents a central issue to the claims of the proposed representative plaintiffs and the class as a whole.

The Court is also unpersuaded by defendants' argument that the proposed representatives' claims are atypical of the class because they were not invested in revenue sharing options. According to plaintiffs, the revenue sharing allegations concern the excessiveness of the fees and expenses charged to all participants.

Here, defendants's alleged acts to cause or allow excessive fees to be charged to the Plans as a whole affects all of the Plan participants, and misleading information is relevant to all Plan participants. Typicality is met even though the individual participants may have some differing interests as to damages because the shared interest in establishing the fiduciary defendants' liability to the Plan outweighs any such "slight divergence." Tussey, 2008 WL 379666.

The fact that plaintiffs Taylor and Todd signed releases does not defeat the typicality of the claims. Plaintiffs point out that the waivers only release claims based on alleged wrongful conduct prior to the date they were executed but do not affect claims based on conduct after the date of execution. Further, ample case law holds that the signing of releases does not affect typicality where ERISA claims allege damage to the Plan as a whole rather than to individuals. See In re Polaroid ERISA Litig., 240 F.R.D. 65, 76 (S.D.N.Y. 2006) (citing cases); see also Bowles v. Reade, 198 F.3d 752, 759-61 (9th Cir. 1999) (finding plaintiff could not release claims brought on

behalf of plan without consent of plan). "Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it may have against certain class members." Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996).

Adequacy of Representation

Defendants assert that the proposed representatives are not adequate because they do not understand the factual underpinnings of the case.

The adequacy inquiry requires this Court to consider whether the named plaintiffs' interests "are antagonistic" to that of the other members of the class. In re Visa Check/Master Money Antitrust Litig., 280 F.3d 124, 142 (2d Cir. 2001). A class representative must have "a sufficient interest in the outcome of the case to ensure vigorous advocacy." Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co. Inc., 229 F.R.D. 395, 413 (S.D.N.Y. 2004). A plaintiff must also have attorneys who are "qualified, experienced, and generally able to conduct the litigation." In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992).

Defendants' argument relies upon the deposition testimony of the named plaintiffs, which reflected their lack of knowledge as to the alleged unreasonable fees. However, as previously discussed, whether participants received adequate information about the fee charges represents an issue to be determined in this case. Therefore, the Court cannot fault the named plaintiffs for their lack of knowledge as to fee charging. Furthermore, a proposed class representative with even a "sketchy" understanding of the case is deemed adequate if he understands his responsibilities, reviews pleadings and keeps abreast of the case by conferring with his attorneys.

Rivera v. Fair Chevrolet Geo. Partnership, 165 F.R.D. 361, 364-65 (D.Conn. 1996). The evidence adduced demonstrates that the named plaintiffs meet this criteria.

There is no indication that the named plaintiffs have a conflict of interest with the class they seek to represent. All the named plaintiffs are participants in the Plan, have been injured, will continue to be injured according to the allegations of the complaint, and have a financial stake in the Plan.[3] The relief sought will affect the Plan as whole, which will benefit the non-named class members. In accordance with these circumstances, the interests of the named plaintiffs align with those of the proposed class members. Loomis v. Exelon Corp., 2007 WL 2981951 (N.D. Ill. 2007).

Further, the Court finds that the firm, Schlicter Bogard & Denton, is qualified to represent the proposed class and subclass.

**Federal Rule of Civil Procedure 23(b)**

Plaintiffs seek to certify this class pursuant to Rule 23(b)(1), which provides that a class may be certified if:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications ... which would establish incompatible standards for the party opposing the class, or (B) adjudications with respect to the individual members of the class which would be dispositive of the interest of the other members not parties to the adjudications.

Subsection A "considers possible prejudice to the defendants" while Subsection B "looks to possible prejudice to the putative class members." In re IKON Office Solutions, 191 F.R.D. 457, 466 (E.D. Pa. 2000).

---

[3] In the following discussion of the scope of the class, the Court determines that the named plaintiffs are participants for purposes of ERISA.

ERISA actions alleging breach of fiduciary duty affecting a large class of beneficiaries "presents a paradigmatic example" for application of Rule 23(b)(1). The instant case appears to fit within both subsections A and B. See Tussey, 2008 WL 379666 (certifying similar action under Rule 23(b)(1)(A) and (B)) . Accordingly, the Court will certify the class and subclass as requested under Rule 23(b)(1)(A) and (B).

**Scope of the Class**

Defendants argue that even if certification is proper, the proposed class is overly broad because it includes both former and future participants in the Plans. Defendants also contend that the class should not include claims arising prior to September 22, 2000, six years before the commencement of the action.

Defendants argue that individuals who have obtained a full distribution of their accounts are not "participants" within the meaning of ERISA, and therefore, they should be excluded from the class. Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 101 (2d Cir. 2005).

In determining whether an employee remains a "participant," the Court must consider whether the plaintiff "may become eligible" for benefits in the future. Nechis, 421 F.3d at 102. Employees who have colorable claims for vested benefits may be considered participants. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989). A plaintiff makes a claim for vested benefits by alleging that distributions received were less than the distributions that he or she was entitled to on account of some defendant's wrongful conduct. Gray v. Briggs, 1998 WL 386177 (S.D.N.Y.). In rejecting an argument similar to that of the instant defendants, this Court held that a participant "who took a lump sum distribution upon retirement and claims that some

11

vested benefit was illegally denied to her because of an administrator's miscalculation or breach of fiduciary duty remains a participant under ERISA." Richards v. FleetBoston Financial Corp., 235 F.R.D. 165, 175 (D.Conn. 2006). Accordingly, the Court will allow for inclusion of former employees who have already received a full distribution of their benefits under the Plan.

The Court will also include within the classes future Plan participants. The complaint requests injunctive relief, which will affect any future participant. Tussey, 2008 WL 379666 (inclusion of future participants is appropriate where injunctive relief is requested).

Finally, defendants argue that the class should exclude claims arising prior to September 22, 2000 pursuant to the statute of limitations for claims of breach of fiduciary duty. 29 U.S.C. § 1113(1). Defendants recognize that the statute of limitations may be tolled in instances of fraud or concealment, but they maintain that plaintiffs' complaint does not reflect such allegations. Upon review, the Court finds that plaintiffs' amended complaint is replete with allegations of fraud and concealment. The Court will consider the merits of plaintiffs' assertion at a later stage in the case.

## **CONCLUSION**

For the foregoing reasons, the motion for certification is GRANTED. The Court certifies the proposed class and subclass pursuant to Rule 23(b)(1)(A) and (B).

_____/s/_____
Warren W. Eginton
Senior U.S. District Judge

Dated this _3rd_ day of June, 2008 at Bridgeport, Connecticut.