UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID S. TAYLOR, et al., ) | |
| ) | |
| Plaintiffs, ) | CASE NO. 3:06-CV-01494 (WWE) |
| ) | |
| v. ) | |
| ) | |
| UNITED TECHNOLOGIES ) | |
| CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | JUNE 6, 2008 |
| ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AGAINST RELEASED CLAIMS OF PLAINTIFFS TAYLOR AND
TODD AND MEMORANDUM IN SUPPORT**

Defendants hereby move pursuant to Federal Rule of Civil Procedure 56 for summary judgment against named plaintiffs David Taylor and Karl Todd, on the bases of the affirmative defenses of release and waiver. The grounds for summary judgment are set forth in the Memorandum below, and in the Local Rule 56(a)(1) Statement of Material Facts submitted with this Motion.

Two of the three named Plaintiffs in this case, Taylor and Todd, are former UTC employees. When their respective employments ended, both expressly waived broad categories of claims as consideration for severance benefits to which they otherwise would not have been entitled. Now, both seek to prosecute and benefit personally from claims they agreed to release. Because those claims are barred, summary judgment should be entered against these two Plaintiffs.

1

**BACKGROUND**

This Section provides a brief overview of the facts surrounding the releases signed by Plaintiffs Taylor and Todd. The material undisputed facts are more fully identified (with citations to evidence) in Defendants' separate Statement of Material Facts.

<u>David Taylor</u>

David Taylor is a former employee of Carrier Corporation ("Carrier"), a wholly owned subsidiary of UTC. After earning his college degree, Taylor began working with Carrier in 1977. Statement of Material Facts ("S.F.") ¶¶ 432, 434. Taylor worked for Carrier for nearly 30 years, holding various managerial roles during his tenure with UTC. *Id.* ¶¶ 432-33. In August 2005, however, Taylor was notified that his position was being eliminated. In connection with his dismissal, Taylor received the opportunity to accept an enhanced severance package in exchange for releasing "any and all" claims against the company. *Id.* ¶ 435.

The separation agreement presented to Taylor in 2005 offered him enhanced severance payments totaling more than $40,000 and other benefits in exchange for releasing his claims against Carrier and other identified parties (including UTC). *Id.* ¶ 438. Taylor was encouraged to consult with an attorney before signing the release, both by the terms of the document and by the human resources employees who informed him of his dismissal. *Id.* ¶ 439. Additionally, he had three weeks to review and consider the agreement before signing. *Id.* ¶ 441. After reading it and consulting with an attorney, Taylor agreed to sign the release in exchange for enhanced severance benefits. Specifically, Taylor agreed to—

> unconditionally release[] and discharge[] Carrier, its predecessors, corporate affiliates, parents, … and all of their former and current officers, directors, shareholders, employees, and agents (in their individual and representative capacities) (collectively referred to as the "Releasees") from any and all causes of action, suits, damages, claims, proceedings, and demands that the Employee has, or may have, against the Releasees, whether asserted or unasserted,

>       whether known or unknown, concerning any matter occurring up
>       to and including the date of the signing of this Agreement.

Ex. 94.  Taylor also acknowledged that he was—

>       waiving and releasing, to the full extent permitted by law, all
>       claims against the Releasees, including (but not limited to) all
>       claims arising out of, or related in any way to, his/her employment
>       with Carrier or the termination of that employment, including (but
>       not limited to) any and all … claims under …the Employee
>       Retirement Income Security Act ….

*Id.*  Taylor understood the consequences of signing the agreement, explaining in his deposition that he was prepared to return the money he received with the severance package in order to proceed with the suit.  *Id.* ¶ 444 (citing Taylor Dep. (Ex. 108)).

<u>Karl Todd</u>

Similarly, Karl Todd signed an agreement releasing certain claims against his employer in exchange for enhanced severance benefits.  Todd is a former employee of Otis Elevator Company ("Otis"), another wholly owned subsidiary of UTC.  *Id.* ¶ 445.  Todd began working for Otis in 1969 as a sales representative, and thereafter rose through the ranks until he attained the position as Otis's vice president of business development and president of North American elevator services.  *Id.* ¶¶ 446-47.  As part of a reduction in force in late 1999, UTC gave Todd the opportunity to retire early with severance benefits, provided he agreed to release claims against his employer.  Recognizing the benefits of this opportunity, Todd accepted in December 1999.  *Id.* ¶ 449.

In the document that he signed, in a paragraph headed "RELEASE AND WAIVER," Todd agreed "to release the Company from all claims, demands, actions, or liabilities you have, may have, or may have had based on your employment with the Company or the termination of that employment."  Ex. 137.

> This release and waiver includes, but is not limited to, any rights or claims you may have under [specified statutes] … or any other federal, state, or local laws or regulations relating to or regulating your employment.  …  This release also includes any claims that you suffered any other harm by or through the actions of the Company, including, but not limited to, claims for defamation or emotional distress.

*Id*.  Todd further "promise[d] never to file and to withdraw with prejudice any pending lawsuit, charge, complaint, or other claim asserting any claim or demand which is within the scope of the Release and Waiver." *Id*.  "This Separation Agreement, including the Release, Waiver of Claims and Covenant Not to Sue, may and shall be pleaded as a full and complete defense to … any action, suit, or other proceeding which may be instituted, prosecuted or maintained in breach thereof." *Id*.

The agreement defined the "Company" to include Otis as well as "United Technologies Corporation and all their subsidiaries, divisions and affiliates." *Id*.

The agreement Todd signed explicitly encouraged him to consult with an attorney and had allowed forty-five days to review and consider.  *Id.* ¶ 451.  Although Todd chose not to consult a lawyer, he read the document in its entirety before signing.  *Id*. ¶ 450.

As consideration for releasing his claims against UTC, Todd received a severance package totaling over $100,000 in compensation and other benefits to which he would not otherwise have been entitled. *Id.* ¶ 457.

## LEGAL STANDARDS

### I. Summary Judgment Standard

UTC is entitled to summary judgment on Taylor's and Todd's claims if UTC demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Salomon v. Our Lady of Victory Hospital*, 514 F.3d 217, 226 (2d Cir. 2008).  Once UTC satisfies its initial burden of showing the absence of a genuine

4

issue of fact material to its affirmative defense, Plaintiffs must present evidence sufficient to raise a triable issue as to such a fact. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In order to create a genuine issue of fact, Plaintiffs "may not rely on conclusory allegations or unsubstantiated speculation" but rather must proffer enough evidence that a reasonable trier of fact could find for Plaintiffs. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

## II.     Relevant ERISA Standards

Agreements releasing claims under the Employee Retirement Income Security Act ("ERISA") such as those signed by Taylor and Todd are enforceable. *See*, *e.g., Linder v. BYK-Chemie USA, Inc.*, No. 3:02CV1956(JGM), 2006 WL 648206, at *10 (D. Conn. March, 10 2006) (Ex. 204) (finding language releasing an employer from any and all claims to be an enforceable release of plaintiff's ERISA claims); *Spann v. AOL Time Warner, Inc.* 219 F.R.D. 307, 319 (S.D.N.Y. 2003) (rejecting plaintiffs' argument that waiver provisions of a severance agreement were unenforceable with respect to ERISA breach of fiduciary duty claims). *See also Lockheed Corp. v. Spink*, 517 U.S. 882, 894 (1996) (finding that severance package conditioned upon the release of employment-related claims was not a prohibited transaction under ERISA). Although ERISA Section 410(a), 29 U.S.C. § 1110(a), invalidates agreements that purport to absolve fiduciaries of their duties, agreements settling disputes based on fiduciaries' prior failure to properly fulfill their duties are permissible. *See Leavitt v. Northwestern Bell Tel. Co.*, 921 F.2d 160, 161-62 (8th Cir. 1990) ("[A] release … merely settles a dispute that the fiduciary did not fulfill its responsibility or duty on a given occasion.")

## ARGUMENT

These two Plaintiffs' claims should be dismissed because both Taylor and Todd knowingly and voluntarily signed an agreement releasing any and all claims against UTC,

including those asserted here.  First, both releases encompass the claims alleged in this case.  Second, undisputed facts show that both Plaintiffs willingly entered into these agreements in exchange for enhanced severance benefits.

**I.      Both Releases Encompass the Claims Asserted Here**

The release agreements signed by Plaintiffs Taylor and Todd encompass the claims asserted in this case.  In their Second Amended Complaint, these Plaintiffs allege that UTC and certain of its employees who serve as fiduciaries to the UTC Employee Savings Plan (the "Plan") violated duties under ERISA, allegedly affecting the value of Taylor's and Todd's accounts in the Plan.  Those account values represent benefits under the Plan, an ERISA defined contribution plan and employment benefit provided by UTC to these former employees of its subsidiaries.  Both agreements release employment-related claims and both encompass all the named Defendants within the scope of their releasees.  Moreover, because the Second Amended Complaint challenges decisions that extend as far back as 1996, before either Plaintiff signed a release, the alleged claims are within the temporal scope of the releases.

    A.      The Taylor Release

By its express terms, the release Taylor signed (the "Taylor Release") bars him from prosecuting "any and all … claims under … the Employee Retirement Income Security Act."  Ex. 94.  Moreover, the agreement "releases and discharges Carrier [and] its…corporate affiliates [and] parents … and all of their former and current officers [and] … employees" from claims.  *Id.*  The released parties thus include Defendant UTC (Carrier's parent company) and Defendants UTC Pension Administration and Investment Committee and UTC Pension Administration Committee, which are composed of officers and other employees of Carrier's parent and affiliates.  S.F. ¶¶ 4, 6.

Moreover, the alleged claims arise from circumstances that predate the release Taylor signed on August 18, 2005. Taylor released "any and all causes of action … concerning any matter up to and including the date of the signing of this agreement." S.F. ¶ 436. Plaintiffs challenge Plan-related decisions that occurred before August 2005. Specifically, the Second Amended Complaint alleges that UTC breached fiduciary duties by agreeing to allow the Plan's recordkeeper, Fidelity Institutional Retirement Services Co. ("Fidelity"), to receive compensation that Plaintiffs claim is unreasonable. Second Amended Complaint ("S.A.C.") ¶¶ 45-55. Yet the initial contract establishing Fidelity's compensation was agreed upon in 1996, and later renewed for terms beginning in 2000 and 2003. S.F. ¶¶ 162, 180, 191. Plaintiffs also allege that fiduciaries breached their duties by deciding to offer actively-managed mutual funds through the Plan. S.A.C. ¶¶ 99-103. Mutual funds were added to the Plan in 1997. S.F. ¶ 63. Accordingly, Plaintiffs' claims stemming from the hiring of Fidelity and the decision to include mutual funds in the Plan arose before Taylor executed the release in 2005 and are barred by it. Furthermore, Taylor alleges that he and other participants were misled by communications distributed to them as long ago as 1997. S.A.C. ¶¶ 63-65, 78-80. Taylor's claim as to such alleged communications arose when they were made, and therefore was released as well. Finally, the alleged claims relating to unitization of the UTC Stock Fund and the supposed disposition of "float" interest to the Plan trustee stem from decisions made years before Taylor signed the release in 2005.[1] *Id.* ¶¶ 32-42; 83-89. The Taylor Release therefore operates to bar all these claims.

---

[1] The record demonstrates that Plaintiff Taylor was never invested in the UTC Stock Fund. S.F. ¶ 86. Even if he had not released his claim to this count, Taylor has no standing to bring this claim.

B.  The Todd Release

The agreement Todd signed (the "Todd Release") broadly releases all claims "based on [his] employment with the Company." Ex. 137. The "Company" is defined to include UTC and its affiliates, *id.*, and thus includes Defendants here. *See Herendeen v. Champion International Corp.*, 525 F.2d 130, 133 (2d Cir. 1975) ("The [pension] Committee itself is merely an administrative arm of the corporation."). Given its broad terms and scope, the release and waiver encompass the ERISA claims Todd alleges here. A release need not specifically state that an employee is waiving ERISA rights to apply to ERISA claims. *See Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 373 (5th Cir. 2002) (finding that a general release of claims applies to all possible causes of action, including ERISA claims). Courts have repeatedly found such general releases to extend to ERISA claims. *See*, *e.g.*, *Linder*, 2006 WL 648206 at *9 (upholding a release to bar plaintiff's ERISA claims even though the release did not expressly mention ERISA); *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1117 (7th Cir. 1990) (finding general release, which barred former employee from bringing any claim "arising from her employment relationship," to preclude ERISA claim for pension benefit).

Plaintiffs might argue that the Todd Release does not apply to the ERISA claims at issue because the release specifically preserves "rights [Todd] may have to pension, health, or similar benefits under the Company's standard policies." Ex. 137. Properly understood, however, the release does not preserve the claims alleged here. Recently, in *Amara v. CIGNA Corp.*, 534 F. Supp. 2d. 288 (D. Conn. 2008), former employees were permitted to bring claims alleging breaches of fiduciary duties under ERISA where the release agreement included an exception for "any *claims* for benefits under any retirement, savings, or other employee benefit programs." *Id.* at 314 (emphasis added). Unlike the agreement at issue in *Amara*, where the carve-out extended to *claims* for specific employment benefits, Todd signed an agreement that preserved only his

8

"*rights* … to pension, health, or similar benefits." Ex. 137 (emphasis added). This exception merely preserves Todd's right to continue to receive uncontested benefits under UTC employee benefit programs, such as his account in the Plan and pension payments from UTC's defined benefit plan; the carve-out does not, however, undermine his waiver of contestable claims regarding the administration of the Plan. Todd himself indicated his awareness of this fact when he testified in his deposition that he was prepared to refund the value of his severance benefits to proceed with the lawsuit. S.F. ¶ 461 (citing Todd Dep. (Ex. 109)) .

Finally, Todd signed the release on December 12, 1999, well after events about which Plaintiffs complain took place. *Id.* ¶ 449. As noted above, the allegations regarding the addition of mutual funds to the Plan and the initial hiring of Fidelity arise from decisions that took effect in 1997. Allegations concerning the UTC Stock Fund and "float" also concern circumstances that predate December 1999. The claims Todd alleges with respect to these issues arose before he signed the release; it therefore bars those claims. Moreover, Count V asserts a claim for damages on behalf of a sub-class of participants invested in mutual funds based on alleged misrepresentations relating to sub-transfer agent payments to Fidelity. *See* S.A.C. ¶¶ 78-80. Todd has invested in only four mutual funds during his participation in the Plan, and his investments in those four funds happened only briefly in 1997-98, S.F. ¶ 89, before he signed the release in 1999. (Todd has been invested solely in index funds through the Plan since 1998. *Id.* ¶ 90.) Accordingly, the Todd Release operates to bar that claim as well.

II.     **Plaintiffs Taylor and Todd Knowingly and Voluntarily Signed Releases in Consideration of Enhanced Severance Benefits from UTC**

Taylor and Todd knowingly and voluntarily released their claims against UTC. To determine whether a beneficiary has released his claims under ERISA, the fundamental inquiry is "whether, in the totality of the circumstances, the individual's waiver of his right can be

9

characterized as knowing and voluntary." *Linder*, 2006 WL 648206 at *6 (quoting *Sharkey v. Utlramar Energy Ltd.*, 70 F.3d 226, 231 (2d Cir. 1995)).  The Second Circuit has identified the following factors as relevant to evaluating whether the release of an ERISA claim was knowing and voluntary:

> 1) the plaintiff's education and business experience,
>
> 2) the amount of time the plaintiff had possession of or access to the agreement before signing it,
>
> 3) the role of plaintiff in deciding the terms of the agreement,
>
> 4) the clarity of the agreement,
>
> 5) whether the plaintiff was represented by or consulted with an attorney, [as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so] and
>
> 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Linder*, 2006 WL 648206 at *7 (citing *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1368 (2d Cir. 1991)).  The absence of any single factor is not dispositive. *Laniok*, 935 F.2d at 1368.  Applying the *Laniok* factors here, it is apparent that both Taylor and Todd "knowingly and voluntarily" released their claims.

As an initial matter, the educational background and extensive experience of both Taylor and Todd provide strong support that each released his claims against UTC knowingly and voluntarily.  Taylor holds a bachelor's degree from the University of Illinois and had acquired nearly thirty years of business experience, including managerial roles, before he signed the release agreement in 2005.  Similarly, Todd had accumulated over thirty years of business experience with Otis and served in an executive role as a vice president when he signed the release agreement in 1999.  Given the breadth and depth of both Plaintiffs' business experience

10

and evident acumen, there is no room to argue that they did not understand the implications of what they were signing.

Additionally, both Plaintiffs were explicitly encouraged to consult with lawyers and given ample time to do so. By its terms, the Taylor Release advised him to consult with an attorney and provided up to twenty-one days for him to consider and review the agreement before signing. Ex. 94. The Todd Release also explicitly encouraged him to seek guidance from counsel and provided forty-five days for review. Ex. 137. Moreover, both releases allowed Plaintiffs seven days *after* signing to change their minds and revoke the agreements. Exs. 94, 137. Taylor, in fact, did consult with an attorney before signing his release. Although Todd did not do so, he admitted that he read the release before signing it (including the provision encouraging him to seek guidance from counsel).

Moreover, the terms of both release agreements are clear. As stated above, the Taylor Release provides in no uncertain terms that in exchange for enhanced severance benefits, Plaintiff Taylor agrees to release "any and all … claims under … the Employee Retirement Income Security Act." Ex. 94. Given Taylor's educational background and assistance from counsel, there can be no genuine dispute that he voluntarily and knowingly waived his right to prosecute ERISA claims in order to obtain severance benefits.

The Todd Release unambiguously releases UTC from "all claims, demands, actions or liabilities you have, may have, or may have had based on your employment with [UTC]." Ex. 137. The carve-out preserving Todd's "rights … to pension, health or similar benefits," *id.*, merely preserves his rights to vested employee benefits. Todd had over a month to review and consider the agreement and, by reading the agreement, he indisputably was put on notice that in signing the release he would waive all claims against UTC.

11

Finally, the values of the consideration each Plaintiff received for agreeing to release any and all claims against Defendants were substantial, and provided benefits to which each Plaintiff otherwise would not have been entitled.  The normal severance benefits to which Taylor was entitled included two weeks of salary and four weeks of benefits continuation.  *See* Ex. 94.  In exchange for releasing claims against Defendants, Taylor received twenty-five additional weeks of continued health benefits and an enhanced severance payment that totaled upwards of $40,000.  *Id.*  Similarly, in exchange for releasing his claims against UTC, Todd received extended health benefits as well as a lump sum severance payment equal to "one week of severance pay, based on your base pay, per year of continuous uninterrupted UTC service …."  Ex. 137.  The value of these additional benefits exceeded $100,000.

Plaintiffs have not proffered any calculations or analyses of damages to which either Taylor or Todd would be individually entitled if their claims had merit.  They are merely two persons among more than 72,000 participants in the Plan, S.F. ¶ 38, all of whom have become members of the class certified by the Court, *see* Dkt. No. 151.  (Notably, Todd was invested in mutual funds only for a matter of weeks and therefore could not benefit significantly from the claims concerning those investment vehicles.)  Given their minuscule share of the Plan's assets, *compare* S.F. ¶¶ 92-93 (Taylor and Todd account balances) *with id.* ¶ 73 (Plan assets:  $13.7 billion), and Plaintiffs' damages theories (which assert large damages in the aggregate but not at the individual level), neither Taylor nor Todd conceivably stand to recover damages as class members that would call the adequacy of the consideration they received for their releases into valid question.

12

## **CONCLUSION**

For the foregoing reasons, the Court should enter summary judgment against Plaintiffs Taylor and Todd, and enter judgment dismissing all claims asserted by them with prejudice.

Respectfully submitted,

| | |
|---|---|
| | /s/ Thomas L. Cubbage III (phv01441) |
| *Of Counsel:* | Jeffrey G. Huvelle (phv01440) |
| Zachary R. Osborne (ct19988) | Thomas L. Cubbage III (phv01441) |
| UNITED TECHNOLOGIES CORPORATION | Peter A. Swanson (phv 01442) |
| One Financial Plaza | COVINGTON & BURLING LLP |
| United Technologies Building | 1201 Pennsylvania Ave., N.W. |
| Hartford, CT 06103-2703 | Washington, D.C. 20004 |
| (860) 728-7821 | (202) 662-6000 |
| (860) 998-4751 (fax) | (202) 662-6291 (fax) |
| zachary.osborne@utc.com | jhuvelle@cov.com |
| | tcubbage@cov.com |
| | pswanson@cov.com |
| | |
| | Steven M. Greenspan (ct00380) |
| | DAY PITNEY LLP |
| | 242 Trumbull Street |
| | Hartford, CT 06103-3499 |
| | (860) 275-0100 |
| | (860) 275-0343 (fax) |
| | smgreenspan@daypitney.com |
| | |
| June 6, 2008 | *Attorneys for Defendants* |

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 6, 2008, a copy of the was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                     /s/
                     Thomas L. Cubbage III (phv01441)